# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### SOUTH BEND DIVISION

| | | |
|---|---|---|
| ARCHIE ROBINSON, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:12CV417-PPS |
| | ) | |
| MARVA LEONARD-DENT, RAPHAEL | ) | |
| MORTON, GLADYS MUHAMMED, | ) | |
| ROBERT TOOTHAKER, EARL | ) | |
| HAIRSTON, SHARON MCDONALD, | ) | |
| DAVE FLECKNER, GEORGE BYERS, | ) | |
| and HOUSING AUTHORITY OF | ) | |
| SOUTH BEND, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Plaintiff Archie Robinson, III owns and operates as a sole proprietorship a business called A Mop and a Bucket, which contracted with defendant Housing Authority of South Bend for the performance of maintenance services. Robinson's second amended complaint alleges that in the course of that business relationship, he suffered years of sexual harassment at the hands of defendant Marva Leonard-Dent, who was then the Executive Director of the Housing Authority. The complaint contains 15 counts, asserting claims under 42 U.S.C. §1983, Title VII and state law. Leonard-Dent has now filed a motion to dismiss the second amended complaint, and HASB and the other defendants have filed a separate motion to dismiss.

The Supreme Court has held that: "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). *See also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). In sum, "the plaintiff must give enough details about the subject-matter of

the case to present a story that holds together." *Swanson v. Citibank*, 614 F.3d 400, 404 (7th Cir. 2010). Construing this standard, the Seventh Circuit advises that: "[i]n reviewing the sufficiency of a complaint under the plausibility standard announced in *Twombly* and *Iqbal*, we accept the well-pleaded facts in the complaint as true, but legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. Oct. 20, 2011). And "the complaint must contain 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief." *McCauley*, 671 F.3d at 616, quoting *Twombly*, 550 U.S. at 557.

## Count I: Gender Discrimination under 42 U.S.C. §1983

"The Supreme Court and [the Seventh Circuit] have held that the equal protection clause contains a federal constitutional right to be free from gender discrimination," and"[a]ll district courts ... that have interpreted this language as it applies to sexual harassment by a state employer have determined that such harassment constitutes sex discrimination in violation of the equal protection clause and is actionable under §1983." *Bohen v. City of East Chicago,* 799F.2d 1180, 1185 (7th Cir.1986) (citations and internal quotations omitted). The parties' duel over Count I highlights that the pleading of Count I contains at least portions of two different theories of gender discrimination. Of course, defendants choose to focus on the theory that is more vulnerable to dismissal, and Robinson focuses on the one that seems less so. The problem is this. Count I clearly alleges that Robinson "was sexually harassed by Dent because he is a male." [DE 34 at ¶88.] Because Count I also incorporates by reference preceding paragraphs of the complaint alleging the myriad ways in which Dent made offensive and unwanted sexual

advances toward Robinson [*Id.* at ¶¶26-43], Count I adequately pleads a claim of gender discrimination in the form of sexual harassment.

But Count I also includes allegations that after Robinson complained about Dent's harassment, a retaliatory investigation was begun into his compliance with the Davis-Bacon Act,[1] which was pretextually used to preclude him from bidding for additional contracts with HASB. This sounds like a distinct theory of discrimination in the form of retaliation. In support of dismissal, HASB argues that Robinson fails to allege sex-based discrimination because some of the other contractors who weren't investigated were also male-owned. But even here I agree with Robinson that the defendants' argument misses the point.

Because this theory is in essence retaliation for Robinson's reports of sexual harassment, the retaliatory motive suffices to support the claim as to why Robinson was singled out for investigation, and no allegation is necessary that all the other contractors who were not investigated were otherwise similar to one another in some way distinct from Robinson. In essence, Count I alleges two different kinds of discrimination claims, and I am not persuaded that defendants' characterization of the claim into yet a third possibility is (a) correct, or (b) provides a basis for concluding that Count I fails to state a claim.

In her separate motion, Leonard-Dent almost laughably contends that Robinson has not stated a plausible gender discrimination claim against her individually. This she can do with a straight face only because she also mischaracterizes the gravamen of Count I as about the pretextual investigation. Count I clearly alleges sexual harassment by Dent and incorporates by

---

[1] The Davis-Bacon Act requires government contractors to pay workers local prevailing wages on public works projects.

reference preceding paragraphs of the complaint alleging the myriad ways in which Dent made offensive and unwanted sexual advances toward Robinson.

Because defendants missed the boat the first time, in their replies they accuse Robinson of recasting Count I in his defense of it against their motions to dismiss. The HASB defendants and Leonard-Dent then launch attacks not previously made in support of their motions. Arguments made for the first time in reply to a motion are waived, and are here unpersuasive in any event. The motions to dismiss will be denied as to Count I of the second amended complaint.

Because Count I's causes of action survive generally, I turn to secondary arguments about which of the HASB defendants the claims are viable against. Claims for individual liability under §1983 require personal responsibility for the constitutional deprivation. *Matthews v. City of East St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012). Clearly the allegations against Dent support claims of sexual harassment and retaliation against her in her individual capacity. The other individual HASB defendants argue that they cannot be on the §1983 hook because Robinson "does not allege any of them affirmatively took an unconstitutional action," and more particularly that Robinson does not assert that any of them "ordered or were involved in the retaliatory and discriminatory investigation." [DE 48 at 15.]

Even as to Board Chairman Morton, to whom Robinson complained of Dent's harassment and so allegedly triggered the unlawful retaliation, the HASB defendants argue that Robinson has fatally failed to allege Morton's retaliatory animus or his participation in the retaliatory investigation. [DE 48 at 15.] But even in the *post- Iqbal* case that defendants suggest has tightened the rules on supervisory liability, the Seventh Circuit held that "turning a blind eye

4

to and affirmatively covering up" sexual abuse by a subordinate can support personal capacity liability because such conduct may be found to demonstrate the requisite discriminatory intent. *T.E. v. Grindle*, 599 F.3d 583, 588, 590 (7th Cir. 2010). Robinson's report to Morton, Morton's then contacting Dent, and the allegation that HASB began a retaliatory investigation rather than address Dent's harassment of Robinson, are sufficient at the pleading stage to support the possibility that the factfinder may ultimately be persuaded that Morton personally had the requisite retaliatory (and therefore discriminatory) intent and participated in the retaliation.

The other individuals named as defendants in their personal capacities are three other members of HASB's Board – Gladys Muhammed, Robert Toothaker and Earl Hairston, HASB's Human Resources Director Sharon McDonald, the Maintenance Manager Dave Fleckner, and Dent's successor as Executive Director, George Byers. Although some of these defendants may be weeded out at the summary judgment stage, I am not persuaded that the claims against them can be dismissed for failure to state a claim. The Seventh Circuit continues to acknowledge that one with authority to take action who stands "idly by" in response to complaints of discrimination may be found to have discriminatory animus. *Smith v. Bray*, 681 F.3d 888, 906 (7th Cir. 2012). The requisite personal responsibility for the constitutional deprivation can take several forms: the supervisor may "'know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'" *Matthews*, 675 F.3d at 708, quoting *Jones v. City of Chicago*, 856 F.2d 985, 992-93 (7th Cir. 1988). *See also Backes v. Village of Peoria Heights, Illinois*, 662 F.3d 866, 869-70 (7th Cir. 2011) [supervisor may be personally liable under §1983 for acts of subordinates if he approves of the unconstitutional conduct and the basis for it].

Dent's successor as Executive Director, George Byers, was on the scene in time to have played a role in (or turned a blind eye to) the retaliatory investigation of AMAAB that deprived Robinson of further business opportunities with the HASB.  Morton's fellow Board members may be shown to have had knowledge of Dent's harassing behavior and/or the complaints of Robinson or others and stood idly by, failing to intervene to halt the harassment and facilitating or condoning the allegedly retaliatory investigation afterward.  Robinson alleges that Human Resources Director McDonald "knew of and witnessed" Dent's harassment of Robinson "but did nothing to stop it." [DE 34 at ¶29.] Maintenance Manager Fleckner allegedly also "knew of the harassment and did nothing to prevent it." [*Id*. at ¶47.] Further challenges to the viability of Count I against each of these individual defendants must await summary judgment.

With respect to HASB itself, defendants contend that the second amended complaint fails to allege facts that would support any of the three ways in which the necessary official custom or policy can be shown.  "The Supreme Court has held that §1983 claims may be brought against municipalities and other local governmental entities for actions by its employees only if those actions were taken pursuant to an unconstitutional policy or custom." *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012), citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978).  *Respondeat superior* is insufficient to create municipal liability under §1983 for an employee's unconstitutional conduct.  *King v. Kramer*, 680 F.3d 1013, 1020 (7th Cir.  2012).  The necessary official policy can be established three ways, through "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation

that the constitutional injury was caused by a person with final policymaking authority." *Estate of Sims v. Cnty. of Bureau*, 506 F.3d 509, 514 (7th Cir. 2007).

Robinson alleges that Dent's sexual harassment was openly communicated and practiced in front of other HASB employees over the course of six years, was known by other supervisory level employees, resulted in at least three other legal claims of harassment, and that the resulting sexually charged environment was even acknowledged by HASB's counsel. [DE 34 at ¶¶27, 28, 29, 42, 46, 47.] These allegations plausibly suggest that a widespread and well-settled custom of tolerating sexual harassment might be found to have existed at the HASB, sufficient to support HASB liability.

Additionally, the second amended complaint alleges that as Executive Director, Dent established and enforced HASB regulations, rules and policies, trained and supervised staff and contractors, and was responsible for ensuring HASB's compliance with applicable laws and regulations. [DE 34 at ¶7.] These allegations are sufficient for now to preserve the possibility that any sexual harassment proved might have been committed by one with final policymaking authority so as to render the HASB liable.

For all these reasons, Count I's claims of sexual harassment and retaliation are not shown to be subject to dismissal at this juncture as against any of the named defendants.

**Count II: Violation of First Amendment Rights under 42 U.S.C. §1983**

Robinson alleges in Count II that his "whistleblowing" – that is, his report to defendant Morton, the Chairman of HASB's Board, that Dent was sexually harassing him – was constitutionally protected speech, so that his First Amendment rights were violated when HASB took adverse retaliatory action against him in response. "A viable First Amendment retaliation

claim by a public employee requires, at a minimum, that the speech being retaliated against be constitutionally protected, which means that the speech must involve a matter of 'public concern.'" *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013). The determination whether a statement rises to the level of public concern is a question of law for the court to make, and the analysis looks primarily to the content of the speech, but also to the form and the context in which the speech was made, which includes consideration of the speaker's motivation. *Id.*

Matters of public concern are generally matters of "political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983). In addition, the first amendment plaintiff "must also show that he was speaking in his capacity as a private citizen rather than as an employee." *Kristofek*, 712 F.3d 979, n. 1. Where a public employee speaks "as an employee upon matters only of personal interest...a federal court is not the appropriate forum in which to review the wisdom of the personnel decision taken by a public agency." *Id.* at 147.

Robinson identifies the content of the speech as a telephonic voicemail to Morton, reporting Dent's inappropriate behavior and requesting that Morton intervene to stop the abuse. [DE 34 at ¶48.] This "speech" was entirely internal to HASB, and in fact Robinson feared its publication even to Dent herself. [*Id.* at ¶¶50, 52.] The matter concerned only Dent's treatment of Robinson in the workplace, not any larger issue "of general interest and of value and concern to the public." *City of San Diego v. Roe*, 543 U.S. 77, 84 (2004). This sort of "internal workplace grievance" is not protected speech for purposes of First Amendment analysis. *Id.* at 83. Robinson complained only of his own mistreatment, and cannot claim that he "sought to expose widespread discrimination" within the agency, which would have been a matter of public

concern.  *Salas v. Wisc. Dept. of Corrections*, 493 F.3d 913, 925 (7th Cir. 2007).  Just as in

*Connick*, Robinson cannot "constitutionalize the employee grievance."  *Connick*, 461 U.S. at

154.   Count II is subject to dismissal for failure to state a claim.

### Count III: Procedural Due Process Violation under 42 U.S.C. §1983

Robinson alleges in Count III that he had "a property right in continued employment and

the maintenance of the 'goodwill' of his business." [DE 34 at ¶103(a).]  Robinson contends that

as these protected property interests have been identified, "it is up to the Court to determine what

process is due" before they can be taken away.  [*Id*. at ¶103(l), quoting *Cleveland Bd. of Educ. v.

Loudermill*, 470 U.S. 532, 541 (1985).] Challenging Count III in their motions to dismiss, the

HASB defendants and Leonard-Dent argue that Robinson does not allege a constitutionally

protected property interest.

Robinson correctly recognizes that his procedural due process claim depends on his

having a demonstrable property right:

> To claim a property interest protected by the Fourteenth Amendment, "a person ...
> must have more than a unilateral expectation of [the claimed interest]. He must,
> instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls.
> v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). 'A legitimate
> claim of entitlement to warrant a due process hearing occurs only when the
> statutes [or] regulations in question establish a framework of factual conditions
> delimiting entitlements which are capable of being explored at a due process
> hearing." *Fincher v. South Bend Heritage Found*., 606 F.3d 331, 334 (7th
> Cir.2010) (internal quotations and citations omitted). "A property interest of
> constitutional magnitude exists only when the state's discretion is 'clearly limited'
> such that the plaintiff cannot be denied the interest 'unless specific conditions are
> met.' " *Brown v. City of Michigan City, Ind.*, 462 F.3d 720, 729 (7th Cir.2006)
> (internal quotations and citation omitted).

*Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).  Robinson does not and cannot claim that he

was a civil service employee with a right to continued employment protected by statute or

ordinance.  The second amended complaint expressly describes the independent contractor relationship between Robinson's company and the Housing Authority:  "Robinson performed maintenance services for HASB by and through his sole proprietorship, [A Mop and A Bucket], via contracts between HASB and AMAAB which specifically expressed duties and obligations of the services to be performed." [DE 34 at ¶3.] Robinson's company in turn hired employees of its own, which is a further indication that the company was a contractor and Robinson was not himself an employee of the Housing Authority. [*Id*. at ¶68.]

Robinson cannot successfully constitutionalize his employment claim by alleging that he was "under contract when he was told that he was precluded from doing further work for HASB" and even if he was not "under contract, he was under an 'implied' contract with HASB because during his six year tenure at HASB, it was seldom that he would complete a contract and not have another contract to start soon after." [DE 34 at ¶103(d)&(e).] The concept of occupational liberty protected by the due process clause is not so focused as this.  Due process does not protect a right to a specific job.  "It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another."  *Board of Regents v. Roth*, 408 U.S. 564, 575 (1972).  Instead, "[i]t is the liberty to pursue a *calling or occupation*, and not the right to a specific job, that is secured by the Fourteenth Amendment."  *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992). Robinson brings all of his claims as an individual plaintiff, not in the name of his business.  He does not and cannot claim that the Housing Authority has somehow precluded him from seeking employment with other employers, or even precluded or impaired A Mop and A Bucket's other business opportunities.

Robinson may recognize the shortcomings of his continued employment theory, because he also asserts that he has "a property interest in the protection of the 'goodwill' of his business," A Mop and A Bucket. [DE 34 at ¶103(j).] This may be an attempt to bolster Robinson's due process claim under cases recognizing that "defamation that is incident to the government's refusal to reemploy an individual can implicate a liberty interest." *Wroblewski*, 965 F.2d at 456. But Robinson's pleading does not allege facts demonstrating the sort of defamation that would give rise to this constitutional protection. Count III itself contains no allegations demonstrating any injury to the goodwill of A Mop and A Bucket. Of the preceding allegations incorporated by reference in Count III, one paragraph obliquely suggests that HASB staff or officials had, in a public meeting, stated that Robinson does not pay his people properly [DE 34 at ¶92(c)] and that based on the investigation into AMAAB's Davis-Bacon compliance, Robinson received hostile telephone calls from former employees who "heard and believed the information coming from HASB; namely, that Robinson was defrauding his employees." [*Id.* at ¶71.][2]

These allegations sound as if they come close to the sort of harm to Robinson's good name, reputation, honor or integrity that could support a protected liberty interest. But Robinson expressly acknowledges in his second amended complaint that he did not in fact comply with Davis-Bacon requirements: "Robinson admits that he did not comply with Davis-Bacon despite signing RFP's and other HASB documents affirming he was in compliance with Davis-Bacon." [*Id.* at ¶ 58.] Defamation presumes falsehood, and if what was being said about A Mop and A

_____

[2] Later in the second amended complaint's pleading of Count V, in a paragraph that is not incorporated by reference into the earlier Count III, Robinson provides more specifics, alleging that the stigmatizing "he does not pay his people" remark was made by Charles Williamson, HASB's Safety Coordinator, at a "public hearing" at the St. Joseph County, Indiana County-City building in the spring of 2012. [DE 34 at ¶116.]

Bucket was true, then a procedural due process claim cannot proceed on the basis of a defamation-plus-loss-of-employment theory.

Even this theory of procedural due process is further defeated by the inadequacy of the allegations about the loss of employment opportunities (or more accurately, business opportunities because the relationship was that of an independent contractor rather than an employee). "To plead a constitutionally relevant tangible loss of his employment opportunities, [plaintiff] must allege that his 'good name, reputation, honor or integrity [was] called into question in a manner that makes it virtually impossible for [him] to find new employment in his chosen field.'" *Abcarian v. McDonald*, 617 F.3d 931, 941 (7th Cir. 2010), quoting *Townsend v. Vallas*, 256 F.3d 661, 670 (7th Cir. 2001). Robinson makes no such allegation for himself, certainly, and not even for A Mop and A Bucket, but only complains that HASB would not award AMAAB any further contracts. That's a far cry from it being virtually impossible for Archie Robinson to find new employment in the maintenance field.

Robinson's opposition to the motions to dismiss does not attempt to defend his procedural due process claim. Robinson's failure to address these issues in his brief itself supports dismissal of the claim. The Seventh Circuit has often observed: "Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." *Kirksey v. R.J. Reynolds Tobacco Co.*, 158 F.3d 1039, 1041 (7th Cir. 1999), quoted in *G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) and in *County of McHenry v. Ins. Co. of the West*,

438 F.3d 813, 819 (7th Cir. 2006).  Count III is subject to dismissal for all the reasons identified above.

### Count IV: Substantive Due Process Violation under 42 U.S.C. §1983

Robinson contends in Count IV that defendants deprived him of his fundamental right to be free from sexual harassment, due to HASB's failure to adequately supervise Dent and control the harassment, including HASB's ratification of Dent's conduct and failure to educate its employees on sexual harassment in the workplace. [DE 34 at ¶¶106-11.] Substantive due process claims come in two varieties.  "The first occurs when the state actor's conduct is such that it 'shocks the conscience.'" *T.E. v. Grindle*, 599 F.3d 583, 589 (7th Cir. 2010), quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952).  Count IV doesn't make this contention, although Robinson attempts it in response to the motion to dismiss.  Taking Robinson's allegations about Dent's harassment as true, Dent's conduct was certainly distasteful, objectionable, crude, ugly and wrong, but can't be said to "shock the conscience."  As sexual harassment goes, it wasn't even near the top of the worst that can be imagined (and unfortunately, that has been done).

The second species of substantive due process claim is the one that Robinson has actually pled in Count IV.  "The second occurs when the state actor violates an identified liberty or property interest protected by the Due Process Clause." *T.E.*, 599 F.3d at 589.   This type of claim "depends on the existence of a fundamental liberty interest." *Idris v. City of Chicago*, 552 F.3d 564, 566 (7th Cir. 2009).  Robinson has asserted a fundamental right to be free from sexual harassment. [DE 34 at ¶106.] The list of rights and interests that have been identified by the Supreme Court as fundamental "is, however, a short one, including things like the right to marry, the right to have children, the right to marital privacy, the right to contraception, and the right to

13

bodily integrity." *Park v. Indiana University School of Dentistry*, 692 F.3d 828, 832 (7th Cir. 2012). Freedom from sexual harassment is not on that list.

Perhaps recognizing this, Robinson defends Count IV against dismissal by invoking the right to bodily integrity and citing *Wudtke v. Davel*, 128 F.3d 1057 (7th Cir. 1997), a case involving an employee compelled to perform oral sex on her supervisor. In *Wudtke*, the Seventh Circuit held that a complaint alleging "serious physical assault...under circumstances where the assaulter is enabled to take his actions because of his governmental position...states a claim" of substantive due process for violation of the plaintiff's fundamental right to bodily integrity. *Id.* at 1063. Years later in *Alexander v. DeAngelo*, the Seventh Circuit clarified that the right to bodily integrity "is infringed by a serious, as distinct from a nominal or trivial, battery" and observed that "most batteries are too trivial to amount to deprivations of liberty." 329 F.3d 912, at 916 (7th Cir. 2003). In *Alexander,* the female plaintiff claimed that she was threatened by police officers into performing a sex act on another police officer in furtherance of a sting operation in which that officer was the target. *Id.* at 914-15. Both *Wudtke* and *Alexander* involved "sex procured by threats...a common form of rape," and therefore serious enough to state a substantive due process claim. *Id.* at 916.

"Typically, cases found to shock the judicial conscience deal with repeated misconduct by a state actor over time that involves the exercise of force and reaches, or closely approaches, the level of rape." *King v. Lienemann*, 2011 WL 833977 at * 4 (S.D.Ill. 2011). Although "the line of demarcation separating a viable substantive due process claim from one that fails is somewhat nebulous," it is clear to me that the allegations of Dent's fairly run-of-the-mill sexual harassment fall on the side of being too trivial to amount to a deprivation of liberty for

constitutional purposes. *Twyman v. Burton,* 757 F.Supp.2d 804, 810 (S.D.Ind. 2010). In

*Twyman*, the court dismissed a claim based on an allegation that a police officer took a photo of

the plaintiff's sex toy and later placed the toy on the plaintiff's car seat so that she would

unwittingly sit on it, finding that it fell "well below the threshold line of egregiousness." *Id.*

Robinson's allegations are in the same vein and likewise fall short of an actual and serious

physical assault. The failure to plead a fundamentally protected interest is fatal to Robinson's

substantive due process claim, and Count IV will be dismissed. *Park*, 692 F.3d at 832.

### Count V: Violation of Protected Liberty Interest under 42 U.S.C. §1983

Attempting to plead yet another due process claim in Count V, Robinson alleges that his

protected liberty interest in the reputation and goodwill of his business, A Mop and A Bucket,

"was stigmatized by HASB's intentional conduct" publicly accusing Robinson of underpaying

his employees. [DE 34 at ¶115.] The same factual underpinnings are offered to support what is

called a protected property interest in Count III and a protected liberty interest in Count V (with

additional detail as to the who/where/when of the stigmatizing statement added in ¶116 within

Count V). As I earlier indicated (*supra* at pp. 11-12), a constitutionally relevant loss of

employment opportunities requires an allegation that the damaging public statement has made it

"virtually impossible...to find new employment in [plaintiff's] chosen field.'" *Abcarian*, 617

F.3d at 941. Instead, Count V alleges merely that as a result of the challenged statement,

Robinson "was precluded from entering into contracts with HASB." As before, such a narrow

allegation is insufficient to support a cognizable due process claim.

**Count VI: Intimidation in Violation of Due Process under 42 U.S.C. §1983**

Yet another due process claim is asserted in Count VI, based on the allegation that the successor to Dent as Executor Director of HASB, defendant George Byers, approached Robinson on two occasions in an attempt to intimidate Robinson into dropping his lawsuit against HASB. [DE 34 at ¶119.] Trying to make out a due process claim, here Robinson claims a "constitutional right to be free from intimidation" and (again) a protected "property right to protect the 'goodwill' of his business," this time "from the perception that he is willing to cut side deals or any other nefarious acts in order to receive a benefit for himself." [*Id.* at ¶122.] Enough has already been said (and repeated) in this opinion about the inadequacy of the "goodwill" of the business as a protected interest for due process purposes.

In Count VI the claim is even less well grounded than previously, as Robinson makes no allegation at all concerning loss of business opportunities but only reputational harm from an unwelcome "perception" about the manner in which he does business. "In order for state action that injures one's reputation to implicate the Due Process Clause, the action must also alter one's legal status or rights." *Schepers v. Commissioner, Indiana Dep't of Correction*, 691 F.3d 909, 914 (7th Cir. 2012). The Supreme Court has long since made clear that injury to reputation by itself is not a constitutional tort. *Paul v. Davis*, 424 U.S. 693, 708-09 (1976); *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991).

As for intimidation, the short list of fundamental rights and interests protected by due process does not include a right to be free from intimidation. Both defendants and I observe that Robinson does not attempt to defend Count VI against the motions to dismiss, and as I have earlier noted that failure can itself support dismissal of a claim. *G&S Holdings*, 697 F.3d at 538;

*County of McHenry*, 438 F.3d at 819.  In any event, because no potentially viable due process claim is pled in Count VI, it is subject to dismissal for failure to state a claim.

### Counts VII - X: Title VII Claims

In Counts VII through X, the second amended complaint asserts employment discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.* for disparate treatment, sexual harassment, hostile work environment and retaliation.  Fatal to all of these is the fact that Robinson's own allegations plead clearly that his relationship with the HASB was as an independent contractor through A Mop and A Bucket, and not as an employee. Independent contractors have no cause of action under Title VII.  *Alam v. Miller Brewing Co.*, 709 F.3d 662, 668 (7th Cir. 2013); *Jones v. A.W. Holdings LLC*, 484 Fed.Appx. 44, 48 (7th Cir. 2012); *Taylor v. ADS, Inc.*, 327 F.3d 579, 581 (7th Cir. 2003).

The second amended complaint expressly describes the independent contractor relationship between Robinson's company and the Housing Authority:  "Robinson performed maintenance services for HASB *by and through his sole proprietorship*, [A Mop and A Bucket], via *contracts between HASB and AMAAB*." [DE 34 at ¶3.] This contractor relationship is further broken down in the complaint:

> 23.    Robinson is the owner of AMAAB, a sole proprietorship.
> 24.    AMAAB and HASB have been parties to contracts with one another dating back to May 2005 and continuing through the period referenced herein.
> 25.    AMAAB performed general maintenance, cleaning and other services for HASB.

[*Id.*]  A Mop and a Bucket in turn hired employees of its own, which is a further indication that the company was a contractor and Robinson was not himself an employee of the Housing Authority. [*Id*. at ¶55, 68.] Perhaps realizing that Title VII cannot be the vehicle for any recovery

here, Robinson does not oppose the dismissal of Counts VII through X, which fail to state a claim because the pleading forecloses any argument that Robinson was an employee of HASB.

### Counts XI through XV: State Law Claims

After ten counts under federal law, Counts XI through XV of the second amended complaint assert claims under state law on theories of premises liability, sexual battery, intentional infliction of emotional distress, breach of implied contract and defamation per se. The defendants' first argument against these claims is that Robinson has fatally failed to comply with the notice requirements applicable to claims against political subdivisions and their employees under the Indiana Tort Claims Act. *See Davidson v. Perron*, 716 N.E.2d 29, 33-34 (Ind.Ct.App. 1999). Indiana Code §34-13-3-8 provides that "a claim against a political subdivision is barred unless notice is filed with...the governing body of that political subdivision; and...the Indiana political subdivision risk management commission...within one hundred eighty (180) days after the loss occurs." "A tort lawsuit against a political subdivision is barred absent the timely filing of a tort claim notice." *Meury v. Eagle-Union Community School Corporation*, 714 N.E.2d 233, 241 (Ind.Ct.App. 1999).

"The question of compliance is not a question of fact, but rather a procedural precedent which the plaintiff must prove and which the trial court must determine prior to trial." *Madden v. Erie Ins. Group*, 634 N.E.2d 791, 793 (Ind.Ct.App. 1994). "Once the defendant raises failure to comply with the ITCA's notice requirements as an affirmative defense, the burden shifts to the plaintiff to prove compliance." *Davidson*, 716 N.E.2d at 34. The Indiana courts will address the issue on a motion to dismiss, subject to the necessity of viewing the pleadings in the light most

favorable to the plaintiff, drawing every reasonable inference in the plaintiff's favor. *Id*. at 34-35.

Movants note that Robinson's formal "Notice of Tort Action" was in the form of a letter from his attorney to the HASB Executive Board dated April 2, 2012. [DE 34 at ¶22; DE 48-1 at 7.] A copy of Robinson's draft complaint had been tendered to HASB's counsel approximately three weeks before, in March 2012. [DE 34 at ¶19; DE 48-1 at 7.] The timeliness of that notice depends on a determination of when "the loss occur[red]" for purposes of the ITCA notice requirement. October 5, 2011 is 180 days prior to April 2, 2012. Did the loss at issue in Robinson's tort claims occur within that time span?

The second amended complaint alleges that contracts for services between AMAAB and HASB date back to May 2005, and that Dent engaged in the sexual harassment of Robinson over the course of at least six years, during which Robinson expressed his objections to Dent. [DE 34 at ¶¶24, 42.] In February 2011, Robinson lodged his report of Dent's behavior and his complaint about it to HASB Board Chairman Morton, after which the allegedly retaliatory investigation and resulting exclusion from contracts began. [DE 34 at ¶48, 54.] Robinson contends that during the investigation, he (that is, AMAAB) "was precluded from contracting with HASB from July 2011 until June 2012." [*Id.* at ¶64.] The state law claims all appear to stem from Dent's sexual harassment of Robinson, which long predated October 5, 2011 and doesn't appear to have continued after that point in time. Furthermore, Robinson now refers to his "resignation on September 9, 2011," after which time Dent would not have been in a position to sexually harass him on the job. [DE 65 at 18.]

Rather than directly dispute the compliance issue or argue that the formal notice given April 2, 2012 was timely, Robinson invokes the notion of substantial compliance. [DE 65 at 17.][3] Indiana courts recognize that substantial compliance with the notice requirements can suffice to meet the statutory purposes, namely informing the political subdivision's officials with reasonable certainty as to the circumstances giving rise to the claim so that the political body can investigate, consider its potential liability and prepare a defense to the claim. *Schoettmer v. Wright*, 922 N.E.2d 702, 707 (Ind.Ct.App. 2013). The substantial compliance doctrine exists to avoid overly harsh results where *the content* of a timely filed written notice does not meet every jot and tittle of the form requirements of the statutory notice under I.C. §34-13-3-10.[4] *Lyons v. Richmond Community School Corporation*, 990 N.E.2d 470, 482 (Ind.Ct.App. 2013).

The determination of what constitutes substantial compliance is a question of law rather than fact. *Schoettmer*, 922 N.E.2d at 707, citing *Collier v. Prater*, 544 N.E.2d 497, 499 (Ind. 1989). The critical consideration is whether the notice "contains sufficient information for the city to ascertain the full nature of the claim against it." *Collier*, 544 N.E.2d at 500. Robinson bears the burden of establishing substantial compliance. *Chang v. Purdue University*, 985 N.E.2d 35, 52 (Ind. Ct.App. 2013). Substantial compliance cannot be invoked to excuse a total failure to provide the type of notice the ITCA requires.

---

[3] Robinson weakly suggests that whether or not he complied with the notice requirement "is the subject of a factual dispute," but without stating the particular disputed facts on which the compliance determination would turn.

[4] I.C. §34-13-3-10 provides that the required notice "must describe in a short and plain statement the facts on which the claim is based. The statement must include the circumstances which brought about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons involved if known, the amount of the damages sought, and the residence of the person making the claim at the time of the loss and at the time of filing the notice."

Robinson argues that his report of the harassment to defendant Morton as the HASB Board Chairman in February 2011constituted substantial compliance with the ITCA notice requirement. [DE 65 at 17.]  But "mere actual knowledge of an occurrence, even when coupled with routine investigation, does not constitute substantial compliance." *Ind. State Highway Comm'n v. Morris*, 528 N.E.2d 468, 470 (Ind. 1988), cited in *Schoettmer*, 922 N.E.2d at 707. Every complaint or grievance aired to responsible city officials does not satisfy the statutory notice requirement.  The Indiana Supreme Court recently reiterated and applied *Collier*'s three requirements to find that a notice achieved substantial compliance:  "it was timely filed, it informed the City that she intended to pursue a claim arising out of the July 25 car accident, and it contained detailed information about that accident." *City of Indianapolis v. Buschman*, 988 N.E.2d 791, 794 (Ind. 2013).

By contrast, Robinson's contact with Morton was a voicemail, not a written notice as required by I.C. §34-13-3-12.  It did not inform the HASB that Robinson intended to pursue a tort action (much less multiple tort claims) arising from Dent's harassment.  It certainly failed to provide HASB sufficient information to ascertain the full nature of the various tort claims later brought against it.  "The municipality must be 'advise[d] of the injured party's intent to assert a tort claim." *Lyons*, 990 N.E.2d at 483, quoting *Bienz v. Bloom*, 674 N.E.2d 990, 1005 (Ind.Ct.App. 1996).  Robinson also refers to his charge of discrimination filed with the EEOC on December 30, 2011 and similar complaint filed with the Indiana Civil Rights Commission on January 9, 2012.  But those charges, although in writing, were not filed with the HASB and would have apprised the HASB of impending claims under Title VII and Indiana civil rights laws, but not of tort claims.  The ITCA notice must also be filed with "the governing body of

21

[the] political subdivision" [I.C. §34-13-3-8(a)(1)] and "must be delivered in person or by registered or certified mail" [I.C. §34-13-3-12]. The administrative charges are not shown to have met these requirements either.

Robinson fails to demonstrate that he substantially complied with the ITCA notice requirement by any means prior to his April 20, 2012 letter with the enclosed copy of his draft complaint. In a move that might address the otherwise untimely nature of that notice, Robinson invokes the doctrine of continuing wrong in an effort to establish that notice was given within the 180 days required by the Indiana statute. Robinson cites a single case on the subject, *Johnson v. Sullivan*, 952 N.E.2d 787, 791 (Ind.Ct.App. 2012). *Johnson* arises in the medical malpractice context, and quotes the Indiana Supreme Court in *Boggs v. Tri-State Radiology, Inc.*, 730 N.E.2d 692, 699 (Ind. 2000), for the proposition that the doctrine of continuing wrong defines "when an act, omission or neglect took place." The significance of that determination is that the statute of limitations begins to run when the wrongful act ceases.

Robinson's theory is that the retaliatory investigation that precluded him from contracting with the HASB continued through June 2012. But that alleged retaliation is not the subject of the state law claims asserted in Counts XI through XV. Furthermore, the Indiana courts have considered the application of the continuing wrong doctrine in the context of the ITCA notice requirement, and have concluded that there, as elsewhere, the doctrine applies where a whole course of conduct combines to produce an injury and so does not delay the commencement of a filing period where a plaintiff knows of his injury but the relationship with the tortfeasor continues thereafter. *Fox v. Rice*, 936 N.E.2d 316, 322 (Ind.Ct.App. 2010). From six years of alleged harassment, Robinson certainly knew of the facts that underlie all of his

sexual harassment-based claims.  For these reasons, Robinson does not successfully rely on the continuing wrong doctrine to avoid the conclusion that his Indiana tort claims (Counts XI, XII, XIII and XV) are barred by his failure to comply with the ITCA notice requirement.

Because Count XIV is a claim for breach of implied contract, I must consider whether the ITCA notice bar applies to defeat that claim along with the claims for premises liability, sexual battery, intentional infliction of emotional distress and defamation.  Robinson's claim for breach of implied contract is a claim for breach of the implied duty of good faith.  [DE 34 at ¶¶170, 172.][5] The Indiana Court of Appeals has recently held that the duty of good faith and fair dealing "is a concept created by the Uniform Commercial Code and restricted to contracts for the sale of goods and is also a concept which our courts have expanded to insurance contracts as a cause of action sounding in tort."  *Amaya v. Brater*, 981 N.E.2d 1235, 1239 (Ind.Ct.App. 2013).  AMAAB's contracts with the HASB were for services rather than for goods, and not governed by the Uniform Commercial Code.[6]  Obviously, the contracts were not related to insurance, either, but if they were, the claim would be defeated by the ITCA notice bar because arising in

---

[5] To the extent that Count XIV attempts to assert a claim of another implied contract, it entirely fails to allege facts necessary to support such a theory and is subject to dismissal under *Twombly*.  The Seventh Circuit has noted that under applicable pleading standards, a claim of breach of implied contract requires facts concerning the promises allegedly made by the parties to the contract, how those promises were communicated and how the exchange of obligations created an implied contract.  *Bissessur v. Indiana University Bd. of Trustees*, 581 F.3d 599, 603-04 (7th Cir. 2009).  Where the pleading leaves the defendant with no notice of what the implied contract is, the claim fails.  *Id.* at 604.  Count XIV is entirely devoid of any allegations as to the terms of an implied contract between Robinson and the HASB, other than its reference to a duty of good faith.

[6] That Robinson was not himself a party to the contracts between AMAAB and the HASB also raises questions about a duty of good faith claim, but those need not be reached given the disposition of the claim on other grounds.

the insurance context, the duty of good faith claim would sound in tort, per *Amaya*.  Count XIV, like the other counts under state law, is subject to dismissal for failure to state a claim.

**Conclusion**

"A complaint must do more than leave open the possibility that the plaintiff might later plead some set of undisclosed facts that would warrant relief."  *Bartley v. Wisc. Dept. of Corrections*, 258 Fed.Appx. 1, 2007 WL 4328666  at *3 (7th Cir. 2007).   Robinson's allegations support his claims of gender discrimination and retaliation under §1983 as pled in Count I of the second amended complaint.  Counts II through XV are all subject to dismissal for failure to state a claim for the reasons I have here explained.

ACCORDINGLY:

Defendants' motions to dismiss [DE 45 and 47] are DENIED IN PART as to Count I of the second amended complaint, and GRANTED IN PART ast to Counts II through XV, which are dismissed for failure to state a claim.

**SO ORDERED**.

ENTERED: October 18, 2013

 s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT